UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| KATHLEEN E. KOTTOM,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ALBERT D. WALKER,<br><br>　　　　Defendant. | Case No.  14-cv-04492-LB<br><br>**ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[ECF Nos. 82, 85] |

## INTRODUCTION

Defendant Albert Dan Walker moves for a partial summary judgment "declaring that he is the lawful and sole beneficiary" under a life-insurance policy, "and is entitled to immediate receipt" of the policy's death benefit "free of any and all claims and encumbrances alleged by Plaintiff Kathleen Kottom." (ECF No. 82 at 2.)[1] The disputed funds are on deposit with the court, the insurer having interpleaded them. The court grants Mr. Walker's motion insofar as it declares him the policy's sole beneficiary. Because this case involves no actual *claim* for the policy proceeds, however — the policy being subsidiary to claims and defenses under a different instrument — and because partial summary-judgment orders are interlocutory, the court declines to release the funds. Disbursement of the interpleaded funds must await a final judgment in this case.

---

[1] Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the tops of documents.

14-cv-04492-LB

**STATEMENT**

The facts of this case are simple and mostly uncontested. This dispute revolves around a "key man" insurance policy that defendant Albert Dan Walker took out on the life of his now deceased business partner, Paul Kottom. Mr. Walker claims that he is the policy's only beneficiary and is entitled to its death benefit. (ECF No. 82 at 2.) Plaintiff Kathleen Kottom (the deceased Mr. Kottom's widow) claims, in sum, that a separate instrument obligates Mr. Walker to pay her the policy proceeds. (*E.g.,* ECF No. 84 at 8.)

Messrs. Walker and Kottom co-owned a snack-food company, Nature's World, LLC. An Operating Agreement (ECF No. 82-2) governed their ownership and management of Nature's World. Though that agreement looms large in this case, for purposes of this discussion, it looms mostly in the background; as the Analysis below will show, it is not necessary here to recite the details of the Operating Agreement. Before his death in 2014, Mr. Walker transferred his ownership and management interest in Nature's World to the Paul and Kathleen Kottom Living Trust, for which Mrs. Kottom is the trustee. (ECF No. 83-6 at 2; ECF No. 84-1 at 2 (¶¶3, 6).)

Returning to the disputed policy: Mr. Walker and Mr. Kottom each took out an insurance policy on the other's life. (*See* ECF No. 72 at 3 (¶ 9); ECF No. 83 at 2 (¶ 3); ECF No. 84-3.) Their exact purpose in doing so is disputed. The evidence suggests both that the gentlemen may have intended the policy benefits to help pay the costs of running Nature's World after one partner's death, and, rather differently, that they may have intended to use the policy proceeds to buy out the decedent's share of the business. For present purposes, though, what Messrs. Walker and Kottom intended to do with the policy's death benefit is immaterial. What matters are the terms of the policy that Mr. Walker took out on Mr. Kottom's life. That policy (#8363342) was issued by Farmers New World Life Insurance Company. Its contents are not in dispute. The named insured on the policy is Paul Kottom. The policy's sole owner and named beneficiary is Mr. Walker. Mr. Walker paid all the policy premiums and, by the instrument's express terms, is to receive "100%" of the death benefit. (*See generally* ECF No. 83-2 (policy).)

After Mr. Kottom died, Mrs. Kottom and Mr. Walker both filed claims with Farmers for the policy's death benefit. Mrs. Kottom then brought this suit against Mr. Walker and Farmers,

seeking a declaration that she is the "lawful and intended beneficiary of the subject life[-]insurance policy." (ECF No. 1.) Claiming no interest in the dispute, other than a desire to pay the proceeds to the correct beneficiary, Farmers interpleaded the death benefit in this court. (ECF No. 11.) The individual parties voluntarily dismissed Farmers from this suit (ECF No. 37) and Mrs. Kottom then amended her complaint (ECF No. 72). Her operative First Amended Complaint (FAC) brings various contract and tort claims against Mr. Walker. (*Id.*) Her essential claim is that the Nature's World Operating Agreement obligates Mr. Walker to use the policy's proceeds to buy out the Trust's ownership share in Nature's World. (*E.g.*, ECF No. 72 at 5-6 (¶¶ 22-26).)

(In her summary-judgment opposition, Mrs. Kottom writes: "This case arises from Ms. Kottom's claims that she is the rightful *third-party beneficiary* of [the subject] life[-]insurance policy . . . ." (ECF No. 84 at 5 (emphasis added).) That is inaccurate. Recovery under a third-party-beneficiary theory invokes a distinct doctrine under both Washington and California contract law, the particular rules of which have been elaborated in statutes and case precedent. *See generally, e.g., Donald B. Murphy Contractors, Inc. v. King Cty.*, 49 P.3d 912, 914 (Wash. App. 2002); *Cline v. Homuth*, 235 Cal. App. 4th 699, 705 (2015). The FAC in this case does not advance, or hint at, a third-party-beneficiary theory. (ECF No. 72, *passim.*) Nor does Mrs. Kottom's summary-judgment briefing. (ECF No. 84, *passim*.))

Mr. Walker now moves for partial summary judgment, asking the court to hold that he is the policy's sole and rightful beneficiary and is entitled to an immediate disbursement of the interpleaded death benefit. (ECF No. 82.)

\* \* \*

**GOVERNING LAW**

**1. Summary Judgment — Rule 56**

The rudiments of summary judgment are familiar. The court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. *Id.* at 248. A dispute about a material fact is genuine if there is sufficient evidence for a

1  reasonable jury to return a verdict for the non-moving party. *Id.* at 248-49.

2  The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting *Celotex*, 477 U.S. at 325).

If the moving party meets its initial burden, then the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. *Nissan Fire & Marine*, 210 F.3d at 1103. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. *See Devereaux*, 263 F.3d at 1076. If the non-moving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *See Celotex*, 477 U.S. at 323.

In ruling on a motion for summary judgment, inferences drawn from the underlying facts are viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

\* \* \*

**2. Choice of Law**

The court holds that Washington law controls interpretation of the insurance policy. Federal courts sitting in diversity generally apply the substantive law of the forum state. *E.g., Nelson v. Int'l Paint Co.*, 716 F.2d 640, 643 (9th Cir. 1983). This includes the forum's choice-of-law rules. *Id.* California law generally enforces contractual choice-of-law terms. *E.g., Smith, Valentino &*

14-cv-04492-LB

4

*Smith, Inc. v. Superior Court*, 17 Cal.3d 491, 494-96 (1976); *Aral v. EarthLink, Inc.*, 134 Cal. App. 4th 544, 557-59 (2005). The policy in this case provides: "This policy is subject to the laws of the state in which it is delivered." (ECF No. 83-2 at 5.) It seems undisputed that the policy was "delivered" in Washington. Mr. Walker, Mr. Kottom, and Farmers executed the policy in Washington. (ECF No. 83-2 at 2, 13 (policy); ECF No. 83-3 at 7 (application).) Mr. Walker and Farmers were both residents of Washington when they entered into the policy. (*See* ECF Nos. 83-2, 83-3.) (The policy shows the insurer's "Home Office" as being in Washington. (ECF No. 83-2 at 2.)) And Mr. Walker paid all premiums for the policy in Washington. (ECF No. 83 at 2 (¶ 4).) The defendant argues that in these circumstances Washington law controls; the plaintiff does not dispute that; and the court reaches the same conclusion.[2]

\* \* \*

## ANALYSIS

### 1. Preliminary: What Is Before the Court?

The court must first determine what, if anything, is properly before it. Can it address the issue on which the defendant seeks partial summary judgment? Mrs. Kottom argues that it cannot. She writes that Mr. Walker "fails to identify what claim(s) or defense(s) he is attempting to dispose of by way of summary judgment." (ECF No. 84 at 7.) She argues that Mr. Walker has thus failed to meet Rule 56(a)'s "most rudimentary" demand; that she has thus been "denied an opportunity" to "cogent[ly]" oppose his motion; and that, for this reason alone, the motion should be denied. (*Id.* at 7-8.)

The court disagrees. Throughout this case, the defendant has expressed his intent to move on the question of the policy itself. His present motion is plainly directed to that question. And his motion is appropriate under Rule 56. Mrs. Kottom errs here by assuming that a Rule 56 movant must challenge entire "claims" or "defenses." That is not so. Rule 56(a) expressly permits partial summary judgments of the type that Mr. Walker seeks. The salient part of Rule 56(a) provides: "A

---

[2] For all these points, see generally Mr. Walker's declaration (ECF No. 83 at 2 (¶¶ 3-4)) and the various documents constituting the insurance contract (ECF Nos. 83-2, -3, and -5).

5
14-cv-04492-LB

party may move for summary judgment, identifying each claim or defense — or the *part* of each claim or defense — on which summary judgment is sought." Fed. R. Civ. P. 56(a) (emphasis added). Even where a court "does not grant all the relief requested by the motion," moreover, it may still "enter an order stating *any material fact* . . . that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g) (emphasis added). A court may thus grant summary judgment on specific issues without granting judgment on an entire cause of action. *See, e.g., First Nat'l Ins. Co. v. Fed. Deposit Ins. Corp.,* 977 F. Supp. 1051 (S.D. Cal. 1997) (denying summary judgment but granting summary "adjudication" of discrete issue). Furthermore, despite Rule 56(a)'s compulsory language — "The court *shall* grant summary judgment if the movant shows . . ." — it has long been accepted that the compulsion is "not absolute." William W. Schwarzer *et al.*, *Federal Civil Procedure Before Trial* ¶ 14:32 (2015). "Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that the better course would be to proceed to a full trial." *Id.* (quoting *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (quoting in turn *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Granting or denying a partial summary judgment is, in the end, "largely . . . a discretionary matter." 10A Charles Alan Wright *et al., Federal Practice & Procedure* § 2728 at 531-32 (3d ed. 1998).

The nature of a partial summary judgment nonetheless limits what the court may do; put differently, a partial summary judgment has innately limited effects. Despite its name, a partial summary judgment "is not a judgment at all but 'merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case.'" *Id.* § 2737 at 323 (quoting Fed. R. Civ. P. 56(d) (Advisory Committee Notes to 1946 amendment)). It "follows" from this that a partial summary judgment "has no preclusive effect, since the trial court retains jurisdiction to modify the order at any time prior to the entry of a final judgment." Wright, *supra,* § 2737 at 323; *accord St. Paul Fire & Marine Ins. Co. v. F.H.*, 55 F.3d 1420, 1425 and n. 2 (9th Cir. 1995) (citing cases); *cf. Solis v. Jasmine Hall Care Homes, Inc.,* 610 F.3d 541, 543-44 (9th Cir. 2010) (dismissing appeal) (partial summary judgment was non-final and not appealable).

These two characteristics of partial summary judgments — that they are permissible but

14-cv-04492-LB

6

provisional — are significant here because of this case's unusual posture. This suit hovers between a straight interpleader action (to declare the rightful beneficiary under an insurance policy) and a damages suit. Former defendant Farmers interpleaded the policy's death benefit with the court because both Mrs. Kottom and Mr. Walker had made direct claims to the insurer for those benefits. (*See* ECF No. 11 at 2-3; ECF No. 24 at 4 (¶ 4).) But this lawsuit does not involve direct claims under the policy. The plaintiff does not allege that she is the policy's beneficiary who is thus entitled to its proceeds. (FAC – ECF No. 72, *passim*.) She instead claims that a separate instrument, the Nature's World Operating Agreement, compels Mr. Walker to use the policy's proceeds to buy the Trust's interest in Nature's World. (*E.g., id.* at 5 (¶ 23); ECF No. 84 at 8, 12.) The policy's role here is thus significant but indirect. This indirection is reflected in how the parties to some degree speak past each other. Thus, Mr. Walker argues that his motion is all about the policy and whether he is its rightful beneficiary (*see* ECF No. 85 at 4-5, 8-9) — and his analysis tracks that perspective. Mrs. Kottom responds that this case is all about the Operating Agreement (ECF No. 84 at 12) — and that understanding shapes her competing analysis.

These considerations underlie the court's two-pronged decision. First, the court holds that it can address Mr. Walker's motion on the policy itself. It can decide whether, given the policy's terms, he is entitled to its proceeds. The policy plays a key role in the plaintiff's amended complaint. For example, Mrs. Kottom there claims that she is "entitled to a declaration that these insurance proceeds are owed to her . . . under the Operating Agreement." (ECF No. 72 6 (¶ 29).)[3] The policy is also instrumental to Mr. Walker's answer. He repeatedly writes: "Defendant continues to deny Plaintiff's alleged entitlement to insurance proceeds she does not own, did not pay for, and [of which] she is not the named beneficiary." (ECF No. 79 at 4-5 (¶¶ 17-18, 28).) The policy — and, more precisely, Mr. Walker's entitlement to the policy's proceeds — is thus "part of a claim or defense" in the Rule 56(a) sense. The policy is a proper object of a Rule 56 motion.

---

[3] *See also, e.g.,* FAC – ECF No. 72 at 4 (¶ 17) ("Walker took the position that the $1 million life[-]insurance policy . . . was not payable to Mr. Kottom's estate . . . ."); *id.* at 6 (¶ 24) ("Walker was obligated . . . to use the [policy] proceeds to buy out Mr. Kottom's interest . . . ."); *id.* at 6 (¶ 31) ("Walker . . . promised that the . . . death benefit would be paid to [Mrs.] Kottom . . . .").

14-cv-04492-LB

7

For the reasons given below, the court ultimately holds that Mr. Walker is entitled to the policy's death benefit.

Second, the fact that no direct claim under the policy has been made in this court, combined with the innately provisional status of a partial summary judgment, means that the court cannot obviously grant the further relief that Mr. Walker seeks: ordering that the funds be immediately disbursed to him. Because a court can revisit and overturn an order on partial summary judgment, such an order does not carry the effects of a true judgment; so far as is relevant here, it has no impact beyond the confines of the lawsuit, within which it "narrows the issues" and thus operates like a pretrial order under Rule 16. *See* Wright, *supra*, §§ 3736-37. Mr. Walker rightly observes that defendants are not ordinarily compelled to deposit in court the alleged amount of damages, at the start of a lawsuit, on the chance that they may later be held liable. But that is not exactly the present situation. The policy's benefits are in court, again, not because Mr. Walker was forced to put them there while Mrs. Kottom's various claims are tried; but, much less objectionably, because Farmers interpleaded them in the face of the parties' competing benefit claims. However practical it may seem to release the funds to Mr. Walker once he is found to be the policy's rightful beneficiary, still the court cannot obviously order that disbursement on the back of a partial summary judgment that, under governing law, is interlocutory. Releasing the funds would, on this view, have to await a final judgment. (Had one or both of the parties made a fully blown, direct *claim* under the policy, then it is possible that the court could have certified a partial summary judgment on the policy as "final" under Rule 54(b). Unlike Rule 56, however, Rule 54(b) does not contemplate that discrete subsidiary issues — as opposed to entire claims — can be deemed final.[4])

That said, a practical approach suggests that the court could reach the opposite decision and

---

[4] The relevant terms of Rule 54(b) provide: "When an action presents more than one claim for relief — whether as a claim, counterclaim, crossclaim, or third-party claim — . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims . . . only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims . . . does not end the action as to any of the claims . . . and may be revised at any time before the entry of a judgment adjudicating all the claims . . . ." Fed. R. Civ. P. 54(b).

choose to disburse the interpleaded funds. The parties have not cited any case law on whether a court can release interpleaded funds in this situation; and the court's own preliminary research did not reveal any. Still, disbursement in these circumstances seems an entirely practical, and discretionary, question. On the one hand, as discussed above, there is something to the uncontroversial idea that a partial summary judgment is interlocutory and has no preclusive effect. On the other hand, there is real, practical resonance in what the defendant says about it not being normal to force a party to deposit funds before it is proven liable. And, after all, the funds are in court only because of a conflict over the policy's rightful beneficiary — an issue the court has now resolved. Mrs. Kottom has no direct claim to the policy *res*. Whether another contract (namely, the Operating Agreement) obligates Mr. Walker to use those policy proceeds in a certain way — which is all the plaintiff claims — is a different question. The defendant has shown that he is entitled to those proceeds. The plaintiff has not provided any authority that would justify withholding those proceeds to cover the possibility that Mr. Walker has liabilities under a different instrument on different legal theories.

The court and the parties discussed these conflicting approaches to disbursement at the November 19, 2015 hearing. Mrs. Kottom there argued that, at a minimum, the court should allow her an opportunity to oppose a motion for release of the funds following any summary-judgment order. The court provides for that motion process at the end of this order.

\* \* \*

## 2. The Policy

"Interpretation of an insurance contract is a question of law . . . ." *Quadrant Corp. v. Am. Stakes Ins. Co.*, 110 P.3d 733, 737 (Wash. 2005) (*en banc*) (citing *Overton v. Consol. Ins. Co.,* 38 P.3d 322 (Wash. 2002)). "The criteria for interpreting insurance contracts in Washington are well settled. We construe insurance policies as contracts. . . . Most importantly, if the policy language is clear and unambiguous, we must enforce it as written; we may not modify it or create ambiguity where none exists." *Quadrant*, 110 P.3d at 737.

The facts concerning the policy itself are uncontested. The named insured on the policy is the deceased Paul Kottom. (ECF No. 83-2 at 2.) It is undisputed that Mr. Walker is the sole owner of

the policy; that he is its sole beneficiary; that he "personally paid all the policy premiums"; and that the policy expressly entitles him to "100%" of the death benefit. (Walker Decl. – ECF No. 83 at 2 (¶ 3); ECF No. 83-2 at 6 (policy); ECF No. 83-3 at 2, 6 (policy application: owner, beneficiary, 100% of proceeds).) The policy describes the "entire contract" as comprising: the policy itself; the application with any amendments or supplements; any attached riders and endorsements; and "any attached application for reinstatement." (ECF No. 83-2 at 5.) Finally, the policy provides: "Any change in the terms of this contract must be in writing and signed by [Farmer's] President or Secretary." (*Id.*)

Mrs. Kottom contests none of this. In fact, she largely concedes these points. It is "true," she agrees, that Mr. Walker "paid for the policy"; that he "never changed the beneficiary to the policy"; and that "the policy itself is an integrated agreement." (ECF No. 84 at 8.)

Rather than challenging the content or effect of the policy itself, the plaintiff argues that such considerations "do not resolve the larger question as to whether there exists *another* agreement" — namely, the Nature's World Operating Agreement — "that confers *other* obligations upon [Mr.] Walker toward his deceased partner — and now [toward] the Kottom Trust." (ECF No. 84 at 8) (emphasis in original). The plaintiff's whole argument — in short, that the Operating Agreement compels Mr. Walker to use the policy benefits to buy out the Trust's interest in Nature's World — assumes that the policy's proceeds go to him in the first instance. If the plaintiff has a direct argument under the policy, an argument that she is its proper beneficiary, she has not advanced it.

This is enough to warrant summary judgment on the policy. The court holds that Mr. Walker is the policy's sole beneficiary and that he is entitled to the death benefit under that policy.

\* \* \*

**3. The Parol Evidence Rule — The Dead Man's Statute — The Terms of the Operating Agreement**

The parties contest the effects of Washington's parol-evidence rule and dead man's statute (Wash. Rev. Code § 5.60.030), and they dispute how to properly read the Nature's World Operating Agreement, particularly that contract's Article 9. The court need not go far into these

topics; they are largely irrelevant to the present motion.

It is on the subjects of the parol-evidence rule and the dead man's statute that the parties speak most strikingly past each other. Thus, Mrs. Kottom argues that extrinsic evidence, including certain statements that her deceased husband allegedly made, can be considered in determining Mr. Walker's obligations *under the Operating Agreement*. (*See* ECF No. 84 at 9-14.) She contends, again, that such evidence can help decide whether the Operating Agreement compels him to use the policy benefits to buy out the Trust's interest in Nature's World. By contrast, Mr. Walker counters that the parol-evidence rule, and the dead man's statute, bar such evidence from affecting how the court interprets the *insurance policy*. (*See* ECF No. 82 at 12-16.)[5] The parties thus dispute how these doctrines affect different instruments.

The correct approach in the face of this disjunction seems to be as follows: The question that is now before the court concerns only the insurance policy. Extrinsic material cannot be used to alter that policy's terms or objective purpose. The Supreme Court of Washington has explained:

> The parol evidence rule precludes the use of extrinsic evidence to add to, subtract from, modify, or contradict the terms of a fully integrated written contract; that is, a contract intended as a final expression of the terms of the agreement. *DePhillips v. Zolt Constr. Co.,* 136 Wash.2d 26, 32, 959 P.2d 1104 (1998). But a party may offer extrinsic evidence in a contract dispute to help the fact finder interpret a contract term and determine the contracting parties' intent regardless of whether the contract's terms are ambiguous. *Berg v. Hudesman,* 115 Wash.2d 657, 667–69, 801 P.2d 222 (1990). Extrinsic evidence is not admissible, however, to show intention independent of the contract. *Hollis v. Garwall, Inc.,* 137 Wash.2d 683, 695, 974 P.2d 836 (1999). Washington courts focus on objective manifestations of the contract rather than the subjective intent of the parties; thus, the subjective intent of the parties is generally irrelevant if the intent can be determined from the actual words used. *Hearst Commc'ns, Inc. v. Seattle Times Co.,* 154 Wash.2d 493, 504, 115 P.3d 262 (2005).

*Brogan & Anensen LLC v. Lamphiear*, 202 P.3d 960, 961-62 (Wash. 2009) (*en banc*) (per curiam). Under these rules, neither the Operating Agreement nor statements by the decedent can modify the policy's terms. Those terms are unambiguous, they express a clear objective intent (to provide certain benefits to a named beneficiary), and extrinsic material cannot be invoked "to

---

[5] Mr. Walker's argument under the dead man's statute may be broader than that; his discussion suggests that the deceased's statements are impermissible for any purpose. (*See* ECF No. 82 at 13-14.) But that is not important for the immediate discussion.

14-cv-04492-LB

11

show [some other] intention independent of the contract." *See id.* The court's decision under the policy — that Mr. Walker is its sole beneficiary — therefore stands.

The Operating Agreement is otherwise beside the present point. Neither party has moved under the Operating Agreement. If the defendant is obligated in contract or tort, outside the policy, to buy the Trust's interest in Nature's World, that is a question for another day. The court expresses no view on how the parol-evidence rule, or the dead man's statute, affects the proof or analysis of the Operating Agreement. Nor does the court express a view on how to correctly interpret Article 9, or any other term, of the Operating Agreement. Such questions are irrelevant to the current motion. Nothing in the plaintiff's discussion of the Operating Agreement rebuts any part of the defendant's analysis under the insurance policy. To the contrary, as discussed earlier, what the plaintiff admits about the policy is alone enough to justify the partial summary judgment that the defendant seeks.

\* \* \*

## CONCLUSION

The court partly grants and partly denies Mr. Walker's motion for partial summary judgment. The motion is granted insofar as the court holds that Mr. Walker is the sole beneficiary of the Farmers life-insurance policy, and that Mrs. Kottom has no claim under that policy. The motion is denied insofar as the court declines, for now, to order the policy's proceeds disbursed from the registry of court to Mr. Walker. The defendant's motion to strike various evidence (ECF No. 85) is denied as moot given how this analysis handled the arguments to which the challenged evidence applied. The court expresses no view on the merits of the defendant's evidentiary motion. Mr. Walker may file a motion to release the interpleaded funds, as discussed earlier in the order; Mrs. Kottom may then oppose that motion, and the defendant reply, according to the usual rules.

This disposes of ECF Nos. 82 and 85.

**IT IS SO ORDERED.**

Dated: November 19, 2015

_____
LAUREL BEELER
United States Magistrate Judge